IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
October 25, 2023 Session

## STATE OF TENNESSEE v. LORI ANNE PIERCE

**Appeal from the Criminal Court for Bradley County**
**No. 20-CR-264        Sandra N.C. Donaghy, Judge**

_____

### No. E2023-00163-CCA-R3-CD
_____

A Bradley County jury found Defendant, Lori Anne Pierce, guilty of possession of methamphetamine with the intent to sell or deliver, a Class B felony (Count 1); possession of alprazolam with the intent to sell or deliver, a Class D felony (Count 2); possession of clonazepam with the intent to sell or deliver, a Class D felony (Count 3); and attempted unlawful possession of drug paraphernalia with intent to deliver, a Class A misdemeanor (Count 4).  On appeal, Defendant challenges whether the evidence was sufficient to prove that she constructively possessed the contraband on all four counts.  Defendant also challenges whether the evidence was sufficient to prove intent to sell or deliver on all counts.  After review, we affirm the judgments of the trial court but remand for correction of the judgment forms to indicate Defendant's proper offender status and release eligibility.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed; Case Remanded**

MATTHEW J. WILSON, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and TOM GREENHOLTZ, JJ., joined.

Brennan M. Wingerter, Assistant Public Defender, Appellate Director (on appeal); and Donald Leon Shahan, Jr., District Public Defender (at trial), for the appellant, Lori Anne Pierce.

Jonathan Skrmetti, Attorney General and Reporter; Lacy E. Wilber, Senior Assistant Attorney General; Stephen D. Crump, District Attorney General; and April D. Romeo, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

## I. Factual and Procedural History

On February 3, 2020, agents of the 10th Judicial District Drug Task Force executed a search warrant at a residence they had been surveilling "for a bit" at 3434 Buchanan Road in Cleveland, Tennessee. Defendant lived at the residence, a mobile home, with her husband, David Pierce, who owned the residence. Agents were looking for Defendant, but she was not present during the search. Mr. Pierce was present, along with three other individuals: Andrea Andrews, Jamar Scott, and an unknown male. Agents did not arrest anyone that day, but after the search, they presented the case to the Bradley County Grand Jury, which returned an indictment against Defendant, charging her with possession of methamphetamine with the intent to sell or deliver, possession of alprazolam with the intent to sell or deliver, possession of clonazepam with the intent to sell or deliver, and possession of drug paraphernalia with intent to deliver.

During the search, agents found drug contraband inside a single bedroom. Agents found a butane torch, a used glass smoking pipe typically used to smoke methamphetamine, a prescription bottle, and a pill bottle containing Xanax, the brand name for alprazolam, on a nightstand to the left of the bed. Agent Brandon Coffel testified that agents found clonazepam and a bottle of Xanax on the left nightstand. On the right nightstand, agents found two pill bottles filled with Xanax. Agent Coffel found it easy to identify the pills as Xanax due to his training and experience, and Agent Dominick Kienlen identified the Xanax as "totem poles." One of the bottles was prescribed to an "Amber Bankston," who was not present at the residence. There were sandwich bags inside the right nightstand with one inside the pill bottle. Agent Coffel testified that drug users typically do not have bags inside their pill bottles. Detective Dave Jones found three glass pipes inside the room. Agents also found a zipper pouch full of unused syringes. Agent Coffel testified that users "typically" either smoked or injected their drugs, and it was rare for a single user to ingest drugs by both methods. When Agent Coffel was asked whether, in his training and experience, "sellers ever sell the mechanism by which to take the drug and needle with their product," he replied, "Yeah, it happens."

Agents also found a pack of cigarettes, a bowl with a spoon in it, one bag of methamphetamine, Defendant's cellphone, digital scales, and clean corner baggies under the bed covers. On top of the covers, agents found an additional bag of methamphetamine and one Oreo cookie bag. The two bags of methamphetamine were packaged as "eight balls ready to . . . sell."[1] Detective Jones testified that dealers use digital scales to

---

[1] According to Agent Coffel, an "eight ball" is 3.5 grams of any drug.

accurately measure and split drugs into smaller amounts, and typically users do not possess or use them.

Additionally, agents found a box of plastic sandwich bags by the bed in Defendant's bedroom. Agent Kienlen explained that while keeping sandwich bags by one's bed seemed "uncommon," such a practice was "common for drug dealers." Agent Kienlen and Detective Jones both testified that drug dealers could obtain "corner baggies" from plastic sandwich bags; a drug dealer would cut the corners from the plastic sandwich bag and use the resulting, smaller "corner bags" to package drugs for resale.

The bedroom where the contraband was found contained multiple indicators that it was Defendant's: a picture on the wall with Defendant's name, "Lori Pierce," on it, numerous self-care products made for women, a picture of one of Defendant's boyfriends, notes addressed to Defendant, Defendant's cellphone, a receipt for "Rent" from "Lori," and Defendant's purse. In the purse, agents found Defendant's driver's license (with the 3434 Buchanan Road address), her Social Security card, an EBT card bearing Defendant's name, and a credit card which also bore Defendant's name. The driver's license was issued October 1, 2019, approximately four months before the search. Nothing in the record indicates that similar items bearing others' names or information were found in the bedroom.

Within the bedroom, agents also located $139. The State offered proof that this amount was comparable to the price of an eight ball of methamphetamine. On the floor, agents also found a magnetic "stash box" which the agents explained dealers use to store and hide illegal contraband. There was a security camera in the bedroom pointed toward the door and two other surveillance cameras set up outside the residence. This camera system was different than most home camera systems because it was not set up to record; it could only provide a live feed. Detective Jones testified that drug dealers use live surveillance feeds to alert them to law enforcement officers or to protect their contraband from theft.

The other bedroom at the residence had a Peyton Manning jersey and an Atlanta Braves flag. A television had the names "Lori," David," and "Dave" on the login screen.

Agent Kienlen testified that the Drug Task Force submitted the narcotics they found at the residence to the Tennessee Bureau of Investigation (TBI) Crime Lab. A TBI agent determined the methamphetamine to be nine grams in total. Agent Hannah Peterson, a special agent forensic scientist with the TBI and expert in chemical analysis of narcotics, identified 6.53 grams of methamphetamine from Defendant's residence. TBI policy is to test narcotics to the "nearest weight threshold" so Agent Peterson did not test an additional amount of suspected methamphetamine found in a corner baggie because it would not reach

the next weight threshold. Agent Peterson identified four green tablets as clonazepam, a Schedule IV drug. Alprazolam (Xanax) is also a Schedule IV drug.

Detective Jones testified that while it was not uncommon for a drug user to possess 3.5 grams of methamphetamine, nine grams indicates an intent to sell or deliver. According to the detective, a typical dosage of methamphetamine is one-quarter gram with some users able to build up a tolerance to one or one and a half gram(s) per day through multiple doses. The nine grams found here, therefore, equates to thirty-six doses. Detective Jones also testified because dealers can split pills into two or four pieces, dealers did not need to carry large quantities of pills.

Detective Monica Datz, an expert in crime scene investigation and latent print examination, received sixteen fingerprints from the residence. Of those sixteen prints, only four were potentially suitable for comparison. Three of those prints came from the magnetic stash box, and the fourth came from the inside cover of the battery compartment on the scales. Those prints were not matched to Defendant or any of the other individuals who were present during the search. Detective Datz testified that it was possible the unsuitable prints could have matched Defendant, but she could not testify with absolute certainty whether Defendant touched any of the items.

After the State rested its case, Defendant chose not to testify or present any evidence. The jury convicted Defendant of Counts 1, 2 and 3 of the indictment, as charged, and of the lesser included offense of attempted unlawful possession of drug paraphernalia with intent to deliver as to Count 4. The trial court sentenced Defendant to eight years as to Count 1, two years as to Counts 2 and 3, and 11 months and 29 days as to Count 4. The court imposed the sentences concurrently, and suspended the sentence to supervised probation after service of 121 days in the county jail. Defendant filed a motion for new trial, which the trial court denied. This timely appeal follows.

## II. Analysis

Defendant argues that the State did not provide sufficient evidence to "prove the statutory elements of 'possession' and 'intent.'" The State argues that the evidence is sufficient to prove the elements beyond a reasonable doubt for all counts.

### A. Standard of Review

The standard of review for a claim challenging the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in

original) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)); *see* Tenn. R. App. P. 13(e); *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011). "This standard of review is identical whether the conviction is predicated on direct or circumstantial evidence, or a combination of both." *State v. Williams*, 558 S.W.3d 633, 638 (Tenn. 2018) (citing *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011)).

A guilty verdict removes the presumption of innocence and replaces it with one of guilt on appeal; therefore, the burden is shifted to the defendant to prove why the evidence is insufficient to support the conviction. *Davis*, 354 S.W.3d at 729 (citing *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011)). On appeal, "we afford the prosecution the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom." *Id*. at 729 (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). In a jury trial, questions involving the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual disputes raised by such evidence, are resolved by the jury as the trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Pruett*, 788 S.W.2d 405, 410 (Tenn. 1990). Therefore, we are precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Stephens*, 521 S.W.3d 718, 724 (Tenn. 2017).

Under Tennessee Code Annotated section 39-17-434(a)(4), "it is an offense for a defendant to knowingly . . . [p]ossess methamphetamine with intent to manufacture, deliver or sell methamphetamine." Similarly, it "is an offense for a defendant to knowingly . . . [p]ossess a controlled substance with intent to manufacture, deliver or sell the controlled substance." *Id.* § 39-17-417(a)(4). Alprazolam (Xanax) and clonazepam are Schedule IV controlled substances. *Id.* § 39-17-412(c)(2), (11). As relevant to this case, it is also unlawful for a person to "possess with intent to deliver" any "drug paraphernalia, knowing, or under circumstances where one reasonably should know, that it will be used to . . . process, prepare, test, . . . pack, repack, store, [or] contain . . . a controlled substance[.]" *Id.* § 39-17-425(b)(1). As charged in the indictment here, the paraphernalia included "digital scales, resale bags, and [three] glass pipes[.]" As charged to the jury, "A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense . . . [a]cts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part[.]" *Id*. § 39-12-101(a)(2).

In this case, Defendant does not challenge whether the substances contained 0.5 grams of methamphetamine or more, or that the substances were alprazolam and clonazepam. Nor does Defendant challenge the discovery of drug paraphernalia inside the residence. Thus, we only analyze the elements of possession and intent below.

## 1. Constructive Possession[2]

For each of the charged offenses, the State was required to prove the element of possession. *Id.* §§ 39-17-417, -425, -434. Defendant argues that the evidence was not sufficient because she was not present during the search of her residence, other individuals were present at her residence during the search, her fingerprints were not identified on any of the contraband, she was not in possession or under the influence of any contraband when she was later arrested, there was no physical or testimonial evidence linking her to the contraband, and the State "failed to prove beyond a reasonable doubt that [Defendant] had recently been at the residence." The State argues that there was sufficient evidence for a rational trier of fact to conclude that Defendant had constructive possession of the contraband. We agree with the State.

Tennessee courts have repeatedly held that "'possession' may be either actual or constructive." *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001) (first citing *State v. Patterson*, 966 S.W.2d 435, 444-45 (Tenn. Crim. App. 1997); and then citing *State v. Brown*, 915 S.W.2d 3, 7 (Tenn. Crim. App. 1995)). There is no question that the evidence was insufficient to prove that Defendant *actually* possessed the contraband; thus, we must determine whether Defendant *constructively* possessed the contraband. For constructive possession to exist, "there must be proof that the accused had 'the power and intention at a given time to exercise dominion and control over . . . [the contraband] either directly or through others.'" *State v. Robinson*, 400 S.W.3d 529, 534 (Tenn. 2013) (citations and internal quotations omitted) (quoting *Shaw*, 37 S.W.3d at 903).

Although the mere presence or association of an individual with a person or an area where drugs are found is not enough to support a finding of constructive possession, *id.* (first citing *State v. Bigsby*, 40 S.W.3d 87, 90 (Tenn. Crim. App. 2000); and then citing *State v. Cooper*, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987)), "a person in possession of the premises where controlled substances are found may also be presumed to possess the controlled substances themselves." *State v. Ross*, 49 S.W.3d 833, 846 (Tenn. 2001) (citing *Armstrong v. State*, 548 S.W.2d 334, 336 (Tenn. Crim. App. 2001)). A defendant may also be found jointly and constructively in possession of contraband when the defendant shares ownership or control over the premises where contraband is found. *See State v. Golden*, No. W2005-02743-CCA-R3-CD, 2006 WL 2242212, at *4 (Tenn. Crim. App. Aug. 4, 2006) (citing *State v. Copeland*, 677 S.W.2d 471, 476 (Tenn. Crim. App. 1984)). In sum, constructive possession rests on the totality of the circumstances of each

---

[2] The facts and circumstances related to possession are identical for each count. As such, we will address all counts together.

case and may be proven exclusively by circumstantial evidence. *Robinson*, 400 S.W.3d at 534; *Dorantes*, 331 S.W.3d at 379.

Defendant argues because she was not at the residence while police searched it, and because there is no temporal connection to show when she was last there, the evidence is insufficient to convict her of possession. This is an argument regarding the weight of the evidence and was for the jury to determine, which rejected it. Under our standard of review, we are precluded from reweighing the evidence. *Davis*, 354 S.W.3d at 729. And we are required to draw every reasonable inference in the State's favor. *Id.* In doing so, we look at the totality of the circumstances. *Robinson*, 400 S.W.3d at 534. Regardless, there was a temporal connection between Defendant and the premises. Her cell phone, her driver's license, and her credit and EBT cards were there. Also, the pack of cigarettes and food found on the bed in the room indicate her recent presence. A reasonable jury could infer that Defendant had recently been in the room or intended to return.

Defendant also argues that the State did not identify her fingerprints on the contraband. Although true, many fingerprints were inconclusive and none of them were linked to anyone else. Defendant also argues that there was no physical or testimonial evidence linking her to the contraband. We agree there is no direct evidence of Defendant's possession. But as we discuss in this opinion, we respectfully disagree with Defendant's characterization of the facts that there was no physical evidence. There was physical evidence, albeit circumstantial. The State also may use circumstantial proof, which alone is enough to sustain a conviction. *Dorantes*, 331 S.W.3d at 379. Further, we view the evidence in the light most favorable to the State regardless of whether the conviction is predicated on direct or circumstantial evidence. *Williams*, 558 S.W.3d at 638.

Defendant argues this case is like *State v. Jones*, No. W2018-01421-CCA-R3-CD, 2020 WL 974197, at *10 (Tenn. Crim. App. Feb. 27, 2020), in which we found the evidence insufficient to prove the defendant constructively possessed a gun and contraband. In *Jones*, the gun and contraband were in a hotel room with the defendant and another individual. *Id.* The police did not find any contraband on the defendant. *Id.* The State did not present any proof as to who rented the room or possessed the key. *Id.* It also did not present any proof related to how long the defendant had been in the room, how long he intended to stay, or whether any of the effects in the room belonged to him. *Id.* The defendant also possessed $118, but we found that amount insignificant in comparison to the $400 the other individual in the room possessed. *Id.*

Here, when viewing the evidence in the light most favorable to the State, the evidence shows that Defendant did constructively possess the contraband. This case is different than *Jones*, where the State failed to prove ownership of the hotel room where the contraband was found, as the contraband here was found inside a bedroom at Defendant's

residence. This specific bedroom had multiple indicia from which a reasonable trier of fact could conclude that the bedroom belonged to Defendant. The room had Defendant's name on the wall, a picture of one of her boyfriends, and notes addressed to Defendant. The room also contained her personal effects, including her cellphone and purse—which contained her driver's license, Social Security card, credit card, an EBT card, and a receipt for "Rent" from "Lori." Defendant's recently issued driver's license bore the 3434 Buchanan address. And, no other personal effects of anyone else were located in the room.

Tennessee courts have held that a defendant can be in possession of contraband even if the defendant is not present where the contraband is located. *Ross*, 49 S.W.3d at 846 (concluding that the defendant constructively possessed contraband in a motel room, registered in his name, that contained personal effects identifying the defendant, even though defendant was not present during the search); *State v. Brown*, 823 S.W.2d 576, 578-80 (Tenn. Crim. App. 1991) (concluding that the defendant constructively possessed contraband found at a house next door to the garage where he worked because the defendant had a key to the house and was observed going to and from the house, even though he was in the garage during the search). We conclude that the evidence here was sufficient for a rational trier of fact to find that Defendant possessed the premises where the contraband was found, and thus she constructively possessed the contraband as well. *See Ross*, 49 S.W.3d at 846 (citing *Armstrong*, 548 S.W.2d at 336). Defendant is not entitled to relief on this issue.

### 2. Intent to Sell or Deliver

On each of the charged offenses, the State also was required to prove the element of intent. Tenn. Code Ann. §§ 39-17-417(a)(4), (c)(1), (e)(2); -425(b)(1), (b)(2); -434(a)(4), (e)(1). As discussed below, Defendant makes several arguments that the evidence was not sufficient to establish intent to sell or deliver. The State argues that any rational trier of fact could have found Defendant intended to sell or deliver the drugs beyond a reasonable doubt because Defendant possessed "digital scales, plastic corner baggies, and quantities of drugs that indicated they were not solely for personal use." We agree with the State.

Under Tennessee law, it "may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing." *Id.* § 39-17-419. We have interpreted this language to permit a "jury to draw an inference of intent to sell or deliver when the amount of the controlled substance and other relevant facts surrounding the arrest are considered *together*." *State v. Belew*, 348 S.W.3d 186, 191 (Tenn. Crim. App. 2005) (emphasis in original). "Proof of intent usually consists of circumstantial evidence and the inferences that can be reasonably drawn from that evidence." *Id.* at 190 (first citing *Hall v. State*, 490

S.W.2d 495, 496 (Tenn. 1973); and then citing *State v. Benson*, No. M2003-02127-CCA-R3-CD, 2004 WL 2266801, at *2 (Tenn. Crim. App. Oct. 8, 2004)).

Tennessee courts, including our supreme court, have held that when a search yields digital scales and plastic sandwich bags alongside a relatively large amount of contraband, it "clearly demonstrate[s] that the defendant had an *intent* to *sell* the controlled substance." *Ross*, 49 S.W.3d at 845 (emphasis in original) (first citing Tenn. Code Ann. § 39-17-419 (1997); and then citing *State v. Chearis*, 995 S.W.2d 641, 645 (Tenn. Crim. App. 1999)). "Such 'other relevant facts' that can give rise to an inference of intent to sell or deliver include the absence of drug paraphernalia, the presence of a large amount of cash, and the packaging of the drugs." *State v. Pewitte*, No. W2013-00962-CCA-R3-CD, 2014 WL 1233030, at *7 (Tenn. Crim. App. Mar. 25, 2014). Indeed, in *Belew*, we explained that this court has affirmed convictions where the amount of the controlled substance was greater than .5 grams and there was other evidence that allowed the jury to draw a reasonable inference that the defendant had intent to sell or deliver. 348 S.W.3d at 191-92. In *Chearis*, we concluded that sufficient evidence existed to support the jury's finding of intent to deliver when the defendant possessed 1.7 grams of crack cocaine, no drug paraphernalia, and 5.1 grams of baking soda. 995 S.W.2d at 645. In *State v. Logan*, 973 S.W.2d 279, 281 (Tenn. Crim. App. 1998), we found sufficient evidence of intent to sell to support a conviction when the defendant possessed a large amount of cash and several small bags of cocaine. In *State v. Brown*, 915 S.W.2d 3, 8 (Tenn. Crim. App. 1995), we found the absence of drug paraphernalia and the manner of packaging of drugs supported an inference of intent to sell. In *State v. Frey*, No. M2003–01996–CCA–R3–CD, 2004 WL 2266799, at *8 (Tenn. Crim. App. Oct. 6, 2004), testimony about 1.8 grams of cocaine, a "stack" of cash, and absence of drug paraphernalia constituted sufficient evidence to support the jury's inference of intent to sell. Further, the presence of different types of drugs can be indicative of an intent to sell or deliver. *See State v. McCulloch*, No. E2021-00404-CCA-R3-CD, 2022 WL 2348568, at *20 (Tenn. Crim. App. June 29, 2022), *perm. app. denied* (Tenn. Dec. 14, 2022).

Defendant advances several arguments why she did not possess the contraband with the intent to sell or deliver. First, Defendant argues that the methamphetamine was in two eight ball baggies, and Detective Jones testified an eight ball is not unusual for personal use. But Detective Jones also testified that two eight balls of methamphetamine suggest a larger quantity than for personal use. Detective Jones testified that a typical dosage of methamphetamine is one-quarter gram. The nine grams found in Defendant's bedroom equates to thirty-six doses. Further, "we have affirmed convictions where the amount of the controlled substance was greater than .5 grams and there existed physical or testimonial evidence, which allowed the jury to draw a permissible inference from the facts surrounding the arrest that the defendant had intent to sell or deliver." *Belew*, 348 S.W.3d at 191 (compiling cases); *see also Chearis*, 995 S.W.2d at 645.

Defendant also argues that the pills were not packaged in a manner that suggested intent to sell or deliver. Defendant claims this suggests the drugs were for personal use. However, Agent Kienlen testified that there was an empty sandwich bag inside a pill bottle, and drug users did not typically keep plastic bags inside their pill bottles. The jury also heard testimony about a box of plastic bags next to the bed and that "corner baggies," as found here, indicated an intent to sell or deliver because dealers "don't want to put [drugs] in an overly large bag. . . . [They] cut the corner off. [They] can usually put a user amount in there and tie it up." And, "when [they] have a whole lot of bags [they] can make several corner baggies." Agent Kienlen also testified that while it is uncommon for a box of bags to be beside one's bed, "it is common for drug dealers." Defendant also argues that digital scales can suggest personal use rather than intent to sell or deliver because drug users measure their purchases to ensure they are not "shorted." But our supreme court has held that a search yielding digital scales and plastic sandwich bags alongside a relatively large amount of narcotics, "clearly demonstrate[s] that the defendant had an *intent* to *sell* the controlled substance." *Ross*, 49 S.W.3d at 845 (emphasis in original, citations omitted); *see also Logan*, 973 S.W.2d at 281; *Brown*, 915 S.W.2d at 8.

Defendant argues that the presence of a "burnt glass pipe and butane torch, plus a bag of clean needles, further indicates personal use by the multiple people who were at the shared residence—some of whom apparently preferred to inhale narcotics while others preferred an injection method." First, as the State points out and Detective Jones testified, just because Defendant may have been a drug user or addict, that does not mean that Defendant was not also a dealer. Agent Coffel also testified that drug users commonly either inject or smoke their drugs but not both. Agent Coffel's testimony suggested Defendant's possessing needles allowed her to include them with the drugs she sold to those users who preferred to inject the substances. Considering there was no evidence tying any other individual to the contraband found in Defendant's bedroom, other than the mere presence of those individuals in other rooms of the house during the search, we find no basis to support Defendant's argument that the evidence is insufficient on this theory. *See Bigsby*, 40 S.W.3d at 90 (citing *Cooper*, 736 S.W.2d at 129).

Finally, Defendant argues that only a small amount of money and no ledger were found. Police found $139 in Defendant's room. The State offered proof that $139 is "comparable to what someone might spend on an eight ball of meth." *See Logan*, 973 S.W.2d at 281 (Tenn. Crim. App. 1998); *Frey*, 2004 WL 2266799, at *8. While Defendant argues that the absence of a ledger suggests Defendant was not dealing, the presence of two surveillance cameras around the residence, and one in Defendant's bedroom pointed at the door, suggests otherwise. The cameras were not set up to record footage, but simply to provide a live, continuous stream. In the light most favorable to the State, this evidence

suggests that Defendant used the cameras to be aware of unwanted individuals, such as police or other drug dealers, to protect Defendant's drug dealing and product.

We conclude that due to the large amount and different kinds of contraband, presence of digital scales, plastic corner bags, presence of paraphernalia suggesting multiple methods of consumption, multiple surveillance cameras, and money comparable to the price of an eight ball of methamphetamine, any rational trier of fact could find that Defendant possessed the contraband (both narcotics and drug paraphernalia[3]) with intent to sell or deliver beyond a reasonable doubt.

### B. Defendant's Sentences

Defendant does not challenge the lengths or manners of service for her convictions. But as Defendant notes in her brief, the judgment forms in this case do not contain notations indicating Defendant's proper offender status and release eligibility. "If the judgment of conviction does not include a sentence range, it shall be returned to the sentencing court to be completed." Tenn. Code Ann. § 40-35-105(c). We agree. Accordingly, this court remands the case to the trial court for the entry of amended judgment forms which properly reflect Defendant's offender status and release eligibility.

### III. Conclusion

For the foregoing reasons, we affirm the judgments of the trial court but remand the case to the trial court for the entry of corrected judgments.

_____
MATTHEW J. WILSON, JUDGE

---

[3] We believe that the proof supports a finding of both possession and an intent to sell or deliver, and it is not a defense to attempt liability that the crime "attempted was actually completed." Tenn. Code Ann. § 39-12-101(c). *State v. Thorpe*, 463 S.W.3d 851, 863 (Tenn. 2015).